UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MILTON DE LA CRUZ NAVARRETE CRUZ,
Petitioner,

v.

MARKWAYNE MULLIN, et al.,
Respondents.

Case No. 2:26-cv-02458-TMC

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS

## I. INTRODUCTION AND BACKGROUND

Petitioner Milton De La Cruz Navarrete Cruz is a citizen of Nicaragua who entered the United States without inspection on December 7, 2022. Dkt. 5 at 2; Dkt. 7-3 at 2. He was apprehended by immigration officers, but "due to detention capacity at the Central Processing Center in El Paso, TX," he was paroled into the country on the condition that he report to an immigration office within 60 days. Dkt. 7-1 at 3; Dkt. 7-3 at 3.

Petitioner failed to do so, and his parole expired on February 8, 2023. Dkt. 7-2 at 3; Dkt. 5 at 2. After more than a year, on March 16, 2024, Respondents issued a Notice to Appear ("NTA") to Petitioner, charging him as removable from the United States. Dkt. 6 ¶ 6. But because Respondents did not file the NTA in immigration court, removal proceedings did not commence. *Id*. Respondents would not make any effort to begin removal proceedings for more

than two more years. *Id.* ¶ 8. Meanwhile, Petitioner applied for asylum and sought permission to work. *See* Dkt. 1 at 16. On December 30, 2025, the U.S. Citizenship and Immigration Services ("USCIS") approved his application for employment authorization, granting him permission to work until June 2027 while his asylum application remained pending. *See id.*

On April 26, 2026, Immigration and Customs Enforcement ("ICE") agents arrested Petitioner without warning in Burien, Washington, transferred him to the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington, and commenced removal proceedings. Dkt. 5 at 3; Dkt. 6 ¶¶ 7–8. On May 27, Petitioner applied for relief from removal. Dkt. 6 ¶ 9. On July 16, an Immigration Judge ("IJ") denied his application and granted his subsequent motion for voluntary departure, giving Petitioner until September 14 to leave the country. *Id.* ¶ 10; Dkt. 7-6 at 3. On September 8, the Court directed Respondents to update the Court on the status of Petitioner's voluntary departure. Dkt. 11. On September 14, Respondents informed the Court that Petitioner had appealed his order of removal to the Board of Immigration Appeals. Dkt. 12.

On July 13, Petitioner filed this petition for a writ of habeas corpus, arguing that he was entitled to notice and a hearing before his arrest because he has no criminal history, has strong ties to the community, and has complied with immigration requirements. Dkt. 1 at 7–11. On July 27, Respondents filed their return, contending that because Petitioner's initial parole had expired in 2023, he should be considered as if he were "stopped at the border" and therefore not entitled to a pre-deprivation hearing. Dkt. 5 at 5–8. On August 10, Petitioner filed a traverse, in which he states, among other things, that he never received a copy of Respondents' response. Dkt. 8 at 1. For the reasons below, the Court GRANTS the petition for a writ of habeas corpus.

## II. LEGAL STANDARD

"Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions." 28 U.S.C. § 2241(a). Habeas petitioners must prove by the

preponderance of the evidence that they are "in custody in violation of the Constitution or laws or treaties of the United States." *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004); 28 U.S.C. § 2241(c).

## III. DISCUSSION

### A. Petitioner has procedural due process rights even as a parolee.

The Court recently addressed the due process rights of a noncitizen who, like the Petitioner, is admitted to the country on parole. *See Kleber Vasquez v. Hernandez*, No. 2:26-cv-02873-TMC, 2026 WL 2936770 (W.D. Wash. Sept. 30, 2026). In *Kleber Vasquez*, the petitioner, Maria Kleber Vasquez, entered the country and was granted parole for a period of two years. *Id*. at *1. She applied for asylum and obtained employment authorization. *Id*. Three months after her parole expired, Kleber Vasquez was arrested for domestic violence. *Id*. She pled guilty to a lesser charge, was sentenced to time served, and was immediately taken into custody by ICE, without a pre-deprivation hearing. *Id*.

In her habeas petition before this Court, Kleber Vasquez argued that her "right to procedural due process was violated because Respondents never provided her notice or an opportunity to be heard before a neutral decisionmaker prior to her re-detention." *Id*. at *2. Respondents countered that "Kleber Vasquez received the process she was due given her status at the termination of her parole." *Id*.

In analyzing the issue, the Court first considered Respondents' argument that "when her term of humanitarian parole expired, Kleber Vasquez returned to her status as an arriving noncitizen at the threshold of the country, and that as a noncitizen seeking initial entry to the United States, she had *no entitlement to any legal rights, constitutional or otherwise*, other than those expressly provided by statute." *Id*. (emphasis added) (internal quotes omitted). The Court rejected this argument, observing that "the Ninth Circuit has recently made clear that, as it has

for generations, the Due Process clause protects all persons within the country's physical borders from arbitrary detention." *Id*. (citing *Padilla v. U.S. Immigr. & Cust. Enforcement*, --- F.4th ----, 2026 WL 2822044, at *16–19 (9th Cir. Sept. 21, 2026)). The Court concluded that "while Kleber Vasquez's legal status regarding admission reverted to that of an arriving noncitizen once her parole expired, the Due Process clause continued to require constitutionally adequate procedures surrounding her detention." *Id*. Similarly, Petitioner here was still protected by the Due Process clause notwithstanding his status as a parolee whose term had expired.

**B. Petitioner's procedural due process rights were violated under *Mathews v. Eldridge*.**

To assess whether the procedures surrounding a noncitizen's detention were adequate, the Court applies the three-part test of *Mathews v. Eldridge*, 424 U.S. 319 (1976). *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022). Under *Mathews*, a court evaluates (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335.

Under the first prong of the *Mathews v. Eldridge* test, the Court in *Kleber Vasquez* observed that release on humanitarian parole can establish a liberty interest in continued freedom from detention and that a continuation of humanitarian parole may be implied if parole has automatically terminated but the noncitizen is not returned to custody. *Id*. at *4 (citing *Flores Torres v. Hermosillo*, No. 2:25-cv-02687-LK, 2026 WL 145715, at *5 (W.D. Wash. Jan. 20, 2026) (collecting cases)). Under the facts of *Kleber Vasquez*, however, the Court found that this "continuation of humanitarian parole" doctrine did not apply because the government re-detained the petitioner approximately three months after her two-year parole term expired. *Id*. Therefore,

her liberty interest was diminished by, among other things, the government's prompt action to return her to custody when her parole expired. *Id*.

In contrast, here, after Petitioner's parole expired in February 2023, the government did nothing for more than a year, and when it did finally issue an NTA—the basic charging document in an immigration case—it failed to file the document with the immigration court, effectively abandoning its efforts to remove Petitioner back to Nicaragua. During this time, Petitioner applied for asylum and obtained work authorization, actions that further bolstered his liberty interest and that, coupled with the government's inaction, distinguish this case from *Kleber Vasquez*. Unlike in *Kleber Vasquez*, here the Government acquiesced in Petitioner's ongoing liberty for years after his parole expired, even as he pursued an affirmative asylum case with USCIS. Thus, the first *Mathews* factor favors Petitioner.

The second and third prongs of *Mathews* are quickly resolved applying these same facts. The risk of erroneous deprivation, and the additional value of a pre-deprivation hearing, are significant when the government fails to follow even the statutory constraints on the termination of humanitarian parole. *See Dieng v. Hermosillo*, No. 2:26-cv-00190-LK, 2026 WL 411857, at *8 (W.D. Wash. Feb. 13, 2026). When Petitioner's humanitarian parole first expired in 2023, the statute and its accompanying regulations directed the government that "[a]ny further inspection or hearing shall be conducted under section 235 or 240 of the INA." *See* 8 C.F.R. § 212.5(e)(2)(i). But the government abandoned those efforts by declining to file the NTA it prepared in 2024, and instead Petitioner was allowed to proceed with his affirmative asylum case. At some point, due process requires that additional safeguards apply before the government could return Petitioner to detention. To hold otherwise—that the government could treat him as if stopped at the border indefinitely into the future, detaining him at any time, for any reason or

no reason—would be to allow essentially arbitrary imprisonment, one of the chief evils the Framers were "committed to guarding against." *Padilla*, --- F.4th ----, 2026 WL 2822044, at *18.

Finally, the government's interest in enforcing mandatory detention under the humanitarian parole statute is demonstrably weakened when it fails to act within a reasonable time upon the expiration of a noncitizen's parole. *Kleber Vasquez*, 2026 WL 2936770, at *4. The additional fiscal or administrative burden of providing Petitioner with a pre-deprivation hearing is far smaller than that of incarcerating someone who could remain safely in the community while his immigration case proceeds. Accordingly, the second and third *Mathews* factors also favor Petitioner, and the government's actions to detain him under 8 U.S.C. § 1225(b)(2) without notice and an opportunity to be heard violated his rights under the Due Process clause.

## IV. CONCLUSION

For the reasons explained above, the Court ORDERS as follows:

1. The petition for writ of habeas corpus (Dkt. 1) is GRANTED.
2. Within ONE day of this Order, Respondents must RELEASE Petitioner Milton De La Cruz Navarrete Cruz.
3. Respondents shall file a status report confirming Petitioner's release no later than October 7, 2026.
4. Respondents must return to Petitioner any personal property, including any personal identification document (other than a passport) and any employment authorization document.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to Petitioner at his last known address.

Dated this 5th day of October, 2026.

Tiffany M. Cartwright
United States District Judge